**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **KIRK T.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. CBD-19-1274** |
| | ) | |
| **ANDREW SAUL,**[1] | ) | |
| | ) | |
| **Commissioner,** | ) | |
| **Social Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION</u>**

Kirk T. ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Administrative Law Judge ("ALJ") denied Plaintiff's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion"), ECF No. 13, Plaintiff's Alternative Motion for Remand ("Alternative Motion"), ECF No. 13, and Defendant's Motion for Summary Judgment ("Defendant's Motion"), ECF No. 14.[2] The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Loc. R. 105.6 (D. Md.). For the reasons presented below, the Court hereby

---

[1] When this proceeding began, Nancy Berryhill was the Acting Commissioner of the Social Security Administration. On June 17, 2019, Andrew Saul was sworn in as Commissioner and is therefore, automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] Following the filing of Defendant's Motion, Defendant filed a Notice of Supplemental Authority citing to a decision filed after the parties' briefing. Notice of Suppl. Auth., ECF No. 15.

**DENIES** Plaintiff's Motion, **DENIES** Defendant's Motion, and **GRANTS** Plaintiff's

Alternative Motion, and **REMANDS** the ALJ's decision pursuant to the fourth sentence of 42

U.S.C. § 405(g) for further proceedings consistent with this opinion.  A separate order will issue.

## I.      Procedural Background

On September 30, 2016, Plaintiff filed for SSI under Title XVI of the SSA, alleging

disability beginning October 1, 2009.  R. 15.  Plaintiff's claim was initially denied on February

3, 2017 and upon reconsideration on May 23, 2017.  R. 15.  An administrative hearing was held

on May 16, 2018.  R. 15.  On June 5, 2018, Plaintiff's claim for SSI was denied.  R. 26.  Plaintiff

sought review by the Appeals Council, which concluded on April 9, 2019, that there was no

basis for granting the request for review.  R. 1.  Plaintiff subsequently filed an appeal with this

Court.  ECF No. 1.

## II.     Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the ALJ

"with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2019).  The Court

must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the

correct law.  *Id.* ("The findings of the Commissioner of Social Security as to any fact, if

supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc.

Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th

Cir. 1990)).  "In other words, if the ALJ has done his or her job correctly and supported the

decision reached with substantial evidence, this Court cannot overturn the decision, even if it

would have reached a contrary result on the same evidence."  *Schoofield v. Barnhart*, 220 F.

Supp. 2d 512, 515 (D. Md. 2002).  Substantial evidence is "more than a mere scintilla."  *Russell*,

440 F. App'x at 164.  "It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971));

*see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966))

(internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may

be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict

were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court

"determine the weight of the evidence" or "substitute its judgment for that of the Secretary

if his decision is supported by substantial evidence."  *Hays*, 907 F.2d at 1456 (citations

omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he

language of § [405(g)] precludes a *de novo* judicial proceeding and requires that the court

uphold the Secretary's decision even should the court disagree with such decision as long as

it is supported by 'substantial evidence.'").  The ALJ, not the Court, has the responsibility to

make findings of fact and resolve evidentiary conflicts.  *Hays*, 907 F.2d at 1456 (citations

omitted).  If the ALJ's factual finding, however, "was reached by means of an improper

standard or misapplication of the law," then that finding is not binding on the Court.

*Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title XVI if he is unable "to

do any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a) (2012).  The

Code of Federal Regulations outlines a five-step process that the Commissioner must follow to

determine if a claimant meets this definition:

> 1) Determine whether the plaintiff is "doing substantial gainful
>    activity." 20 C.F.R. § 416.920(a)(4)(i) (2012).  If he is doing such

3

activity, he is not disabled.  If he is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 416.920(a)(4)(ii) (2012).  If he does not have such impairment or combination of impairments, he is not disabled.  If he does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement."  20 C.F.R. § 416.920(a)(4)(iii) (2012).  If he does have such impairment, he is disabled.  If he does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work."  20 C.F.R. § 416.920(a)(4)(iv) (2012).  If he can perform such work, he is not disabled.  If he cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering his RFC, age, education, and work experience.  20 C.F.R. § 416.920(a)(4)(v) (2012).  If he can perform other work, he is not disabled.  If he cannot, he is disabled.

20 C.F.R. § 416.920(a)(4) (2012).  Plaintiff has the burden to prove that he is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five.  *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

Generally, the Court will affirm the Social Security Administration's disability determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.  *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018) (citing *Mascio*, 780 F.3d at 634).  But when performing an RFC assessment, the ALJ must provide a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence.  SSR 96-8p, 1996 WL 374184, at *7 (S.S.A).  "In other

words, the ALJ must *both* identify evidence that supports his conclusion *and* 'build an accurate logical bridge from [that] evidence to his conclusion.'" *Woods*, 888 F.3d at 694.

A proper RFC analysis has three components: (1) evidence; (2) logical explanation; and (3) conclusion. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). The ALJ's logical explanation is just as important as the other two. *Id*. Without a proper narrative discussion from the ALJ, it is impossible for the Court to determine whether the decision was based on substantial evidence. *Geblaoui v. Berryhill*, No. CBD-17-1229, 2018 WL 3049223, at *3 (D. Md. June 20, 2018) (citing *Jones v. Astrue*, No. SKG-09-1683, 2011 WL 5833638, at *14 (D. Md. Nov. 18, 2011)). "The ALJ has the obligation to consider *all* relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (emphasis added). The ALJ must also include "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)).

### III.  Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 11–26. At step one, the ALJ determined that "[Plaintiff] has not engaged in substantial gainful activity since April 14, 2017, the alleged onset date." R. 17. At step two, under 20 C.F.R. § 416.920(c), the ALJ determined that "[Plaintiff] has the following severe impairments: depressive, bipolar and related disorders and personality disorders." R. 17. At step three, the ALJ determined "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404,

5

Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926)."  R. 18.  The ALJ found

that Plaintiff has moderate limitations in concentrating, persisting, or maintaining pace.  R. 18.

Before turning to step four, the ALJ determined that Plaintiff had the RFC to "perform a full

range of work at all exertional levels . . . ."  R. 20.  The ALJ limited Plaintiff to the following

limitations:

> [Plaintiff] is limited to performing simple routine tasks.  [Plaintiff]
> can frequently interact with supervisors, and he can occasionally
> interact with coworkers and the public.

R. 20.  At step four, the ALJ determined Plaintiff has no past relevant work.  R. 24.  At step five,

with the benefit of a Vocational Expert ("VE"), the ALJ found that there are jobs that exist in

significant numbers in the national economy that Plaintiff can perform, including: janitor,

general production helper, and cleaner of equipment.  R. 25.  The ALJ found that "Plaintiff has

not been under a disability, as defined in the Social Security Act, since April 14, 2017, the

amended alleged onset date."  R. 26.

On appeal, Plaintiff argues that the Court should reverse the final decision of the ALJ, or

in the alternative, remand the case to the Social Security Administration for further proceedings,

alleging that: (1) the ALJ substituted his own judgment for uncontroverted medical evidence; (2)

the ALJ's analysis is not supported by substantial evidence because the ALJ failed to account for

Plaintiff's moderate limitations in maintaining concentration, persistence and pace; (3) "the

ALJ's hypothetical question to the VE, and the VE's response thereto is inconsistent with the

Dictionary of Occupational Titles ("D.O.T.") and SSR 85-15 and 96-8p"; (4) "the ALJ failed to

find Plaintiff's full-scale IQ of 75 and amnestic disorder to be severe impairments at step 2 of

sequential evaluation"; and (5) "the ALJ failed to consider whether Plaintiff meets and/or equals

Medical Listing 12.04(c)."  Pl.'s Br. in Supp. of Mot. 8–23, ECF No. 13–1.

### A.  Weight accorded to Plaintiff's treating physician and state consultant's opinions

Plaintiff alleges that the ALJ "utterly disregarded the mental limitations of the treating psychiatrist and two consultative psychologists in support of his own non-medical conclusions."[3] *Id*. at 9.  Plaintiff avers that the ALJ failed because "[d]espite medical sources assessing [Plaintiff's] marked limitations in a work environment, the ALJ found that [Plaintiff had] moderate limitations in concentration, persistence and maintaining pace; and moderate limitations in interacting with others."  *Id*.  According to Plaintiff, "the ALJ was essentially 'playing doctor.'"  *Id*.  Defendant on the other hand avers that "the ALJ properly weighed the opinions from medical and other sources . . . ."  Def.'s Mem. in Supp. of Def.'s Mot. 14, ECF No. 14.

Generally, the opinions of treating physicians are given greater weight than the opinions of other examining physicians because they are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ."  20 C.F.R. § 404.1527(c)(2) (2017).  If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record[,]" the ALJ must give it controlling weight.  *Lewis*, 858 F.3d at 867 (citing 20 C.F.R. § 404.1527(c)(2)).  "However, where a treating physician's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence it should be afforded significantly less weight."  *Skinner v. Berryhill*, No. ADC-16-3957, 2017 WL 5624950, at *9 (D. Md. Nov. 11, 2017) (citing *Lewis*, 858 F.3d at

---

[3] Plaintiff failed to identify which of the six opinions analyzed by the ALJ Plaintiff referred to, however the Court was able to identify that Plaintiff referred to Rick Parente, Ph.D ("Rick Parente") and K. Wessel, Ed.D ("K. Wessel") as the two consultative psychologists and Dr. Shawn Chambers, as the treating psychiatrist.  R. 22.

867).  An ALJ is not required to give controlling weight to a treating physician's opinion on the

ultimate issue of disability because that issue remains for the Commissioner alone.  20 C.F.R. §

414.1527(d)(1) (2017).

      "Generally, courts should not disturb an ALJ's decision as to the weight afforded to a

medical opinion absent some indication that the ALJ 'dredged up specious inconsistencies.'"

*Thompson v. Berryhill*, No. 3:16cv815, 2018 WL 715597, at *4 (D. Md. Jan. 18, 2018) (citing

*Dunn v. Colvin*, 607 Fed. App'x. 264, 267 (4th Cir. 2015)).  If a treating source's opinion is not

given controlling weight, the ALJ must consider the following factors in deciding the appropriate

weight to give the treating physician's opinion:

> (1) the length and frequency of the treatment relationship; (2) the
> nature and extent of the treatment relationship; (3) the amount of
> evidence supporting the physician's opinion; (4) the consistency of
> the opinion with the record as a whole; (5) whether the physician is
> a specialist giving an opinion about his area of specialty; and (6)
> any other factors which tend to support or contradict the opinion.

*Skinner*, No. ADC-16-3957, 2017 WL 5624950, at *9 (citing 20 § C.F.R. 404.1527(c)(1)–(6)).

"An ALJ need not apply these factors in a mechanical fashion, so long as the ALJ articulates the

reasoning behind the weight accorded to the opinion."  *Id.* (citing *Carter v. Astrue*, No. CBD-10-

1882, 2011 WL 3273060, at *6 (D. Md. July 27, 2011)).  "The regulations require only that

'good reasons' be provided for the weight given to a treating physician's opinion."  *Id.* (citing 20

C.F.R. § 404.527(c)(2)).

> An ALJ may, however, credit the opinion of a non-treating, non-
> examining source where that opinion has sufficient indicia of
> 'supportability in the form of a high-quality explanation for the
> opinion and a significant amount of substantiating evidence,
> particularly medical signs and laboratory findings; consistency
> between the opinion and the record as a whole; and specialization
> in the subject matter of the opinion.'

*Woods*, 888 F.3d at 695 (quoting *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 268 (4th Cir. 2017)).

### 1.  Dr. Shawn Chambers

The ALJ's analysis as to Dr. Chambers' 2017 assessment of Plaintiff is as follows:

> I give little weight to the April 20, 2017, medical assessment report completed by [Plaintiff's] treating psychiatrist, [Dr. Chambers]. Dr. Chambers opined that [Plaintiff] would experience a substantial loss of ability in the following areas: to understand, remember, and carry out simple instructions, to respond appropriately to supervisors, coworkers, and usual work situations, and to deal with changes in the routine work setting.  Finally, Dr. Chambers stated that [Plaintiff] had marked limitations in maintaining social functioning and in maintaining concentration, persistence or pace.

R. 22 (internal citations omitted).

The Court finds the ALJ's analysis did not sufficiently address why Dr. Chambers' assessment report, was not given controlling weight.  Although the ALJ did not "dredge up specious inconsistencies," *Thompson*, 2018 WL 715597, at *4, in his analysis, he also did not provide any explanation as to why he provided little weight.  The ALJ simply concluded that he gave little weight to Dr. Chambers' medical assessment, and discussed what Dr. Chambers said. Although the ALJ need not mechanically apply the factors laid out in *Skinner*, the ALJ still has a duty to articulate the reasoning behind the weight accorded to the opinion.  *Skinner*, 2017 WL 5624950, at *9.  Without an explanation, the Court agrees with Plaintiff, and finds the ALJ substituted his opinion for the treating physician's opinion.  Hence, remand is required to allow the ALJ to articulate the reasoning for the limited weight given to Dr. Chambers' opinion.

### 2.  Rick Parente, Ph.D

The ALJ's analysis as to Rick Parente's opinion of Plaintiff is as follows:

> I give little weight to the January 23, 2009, opinions expressed by Rick Parente, Ph.D., following the psychological consultative examination. Dr. Parente stated that [Plaintiff] could not work due to his psychiatric symptoms and cognitive state. This is an opinion on an issue that exceeds the expertise of Dr. Parente and is reserved to the Commissioner of Social Security under the law and Social Security Ruling 96-5p. I give little weight to Dr. Parente's opinion because his assessment was completed over eight years before the amended alleged onset date, and his opinion is not consistent with the evidence of record. For example, during the February 1, 2017, psychological consultative examination, there was no evidence of homicidal ideation, [Plaintiff's] speech was normal, his thought content was appropriate, and his judgment and insight were both within normal limits.

R. 22 (internal citations omitted).

The Court finds the ALJ sufficiently articulated why he gave Rick Parente's opinion little weight. Unlike the ALJ's analysis for Dr. Chambers, the Court finds the ALJ sufficiently addressed Rick Parente's opinion. ALJ articulated reasons as to why he gave limited weight to Rick Parente's opinion. The ALJ rightfully identified that Rick Parente's assessment was eight years old and that a finding of disability is "reserved for the ALJ and the ALJ only." *Dunn*, 607 Fed. App'x. at 269. Further, the ALJ identified inconsistencies between the assessment and the medical record. Hence, the Court finds that the ALJ did not err.

### 3. K. Wessel, Ed.D

The ALJ's analysis as to K. Wessel's opinion of Plaintiff is as follows:

> . . . I give little weight to the February 11, 2009, psychiatric review technique assessment completed by the State agency psychological consultant, K. Wessel, Ed.D. Dr. Wessel determined that [Plaintiff] had moderate limitations in activities of daily living, marked limitations in maintain [sic] social functioning, moderate limitations in maintaining concentration, persistence or pace, and one or two episodes of decompensation. I give little weight to Dr. Wessel's assessment because it was performed long before the current amended alleged onset date of April 14, 2017. Additionally, [Plaintiff's] April 2017 mental status examination was within normal limits, documenting intact cognition, no

10

> evidence of hallucinations or paranoia, intact attention and
> concentration, and intact memory.

R. 22 (internal citations omitted).

Similar to the ALJ's analysis of Rick Parente, the Court finds the ALJ sufficiently articulated why he gave limited weight to K. Wessel's opinion of Plaintiff. The ALJ identified that K. Wessel's assessment was performed long before the amended alleged onset date. The ALJ need not credit the opinion of a non-treating physician, but may do so if the ALJ finds "opinion has sufficient indicia of 'supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter of the opinion.'" *Woods*, 888 F.3d at 695 (quoting *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 268 (4th Cir. 2017)). In this case, the ALJ clearly did not credit K. Wessel's opinion and stated reasons as to why. It is not the Court's role to disturb an ALJ's decision as to the weight afforded to a medical opinion absent some indication that the ALJ dredged up specious inconsistencies. *Thompson*, 2018 WL 715597, at *4. Hence, the Court finds the ALJ sufficiently addressed K. Wessel's opinion, and did not err.

**B. The ALJ's RFC was insufficient because it failed to include an explicit conclusion about how Plaintiff's mental limitations affect his ability to perform job-related tasks for a full workday.**

Plaintiff asserts that the ALJ failed to sufficiently address Plaintiff's mental limitations in the RFC. Pl.'s Brief in Supp. of Pl.'s Mot. 10–11. Specifically, Plaintiff avers that the ALJ's "[f]ailure to account for [Plaintiff's] moderate limitations in maintaining concentration, persistence and pace falls squarely within [Mascio]." *Id*. Plaintiff also avers that "the ALJ's inadequate mental RFC frustrates meaningful review of whether the ALJ found any limitations in [Plaintiff's] ability to stay on task, 8 hours a day, 5 days a week; and therefore, remand is

appropriate." *Id.* at 12.  Plaintiff further states that "[b]y only limiting [Plaintiff] to performing simple, routine tasks; the ALJ failed to take into account [Plaintiff's] ability to stay on task 8-hours a day, for 5 days a week." *Id.* at 13.  Defendant on the other hand, avers that the ALJ properly accounted for [Plaintiff's] moderate mental limitations in the RFC.  Def.'s Mem. of Law in Supp. of Def.'s Mot. 10.  Defendant also stated that *Mascio* "does not establish a 'per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis.'" *Id.* at 11.  Defendant also in the Notice of Supplemental Authority, cites to *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020), to highlight the U.S. Court of Appeals for the Fourth Circuit's decision which stated that there is no "categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC."  Notice of Supplemental Authority (citing *Shinaberry*, 952 F.3d at 121).  The Court agrees with Plaintiff and remands the case.

In *Mascio v. Colvin*, the Fourth Circuit held that a RFC assessment must account for an ALJ's step three finding of moderate limitations in concentration, persistence, or maintaining pace beyond limiting a claimant to performing only "simple, routine tasks."  780 F.3d 632, 638 (4th Cir. 2015).  This Court further clarified that, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in his RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, Soc. Sec.*, No. ELH-14- 2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015).  The functional area of concentration, persistence, or maintaining pace, "refers to the abilities to focus attention on work activities and stay on task at a sustained rate."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3).  Since *Mascio*, courts have reviewed various ALJs' attempts to include

corresponding limitations in their RFC assessments for moderate limitations in this functional area.[4]  However, as stated by Defendant, recently the Fourth Circuit stated that there is no "categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry*, 952 F.3d at 121.  "An ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in the claimant's RFC." *Id.*  "When medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).  "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." *Id.*

In *Thomas*, the ALJ found the plaintiff had moderate limitations in concentration, persistence, or maintaining pace, and concluded that the plaintiff had a RFC to perform light work with the following additional mental limitations:

> [The plaintiff] is able to follow short, simple instructions and perform routine tasks, but no work requiring a production rate or demand pace.  She can have occasional public contact or interaction and frequent, but not continuous, contact or interaction with coworkers and supervisors.  [She] must avoid

---

[4] *See, e.g.*, *Wilson v. Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-17-2666, 2018 WL 3941946, at *5–6 (D. Md. Aug. 16, 2018) (holding that limitations for interactions with other individuals does not address concentration, persistence, or maintaining pace; rather it addresses social functioning); *McDonald v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-3041, 2017 WL 3037554, at *4 (D. Md. July 18, 2017) (concluding "a RFC restriction that [the claimant could] perform 'simple, routine, and repetitive tasks involving only simple work-related decisions with few if any workplace changes and only occasional supervision'" was insufficient to meet *Mascio* requirements); *Steele v. Comm'r, Soc. Sec.*, No. MJG- 15-1725, 2016 WL 1427014, at *4 (D. Md. Apr. 11, 2016) (citing SSR 96-9P) (holding that when a RFC includes durational limitations, an ALJ must consider that the normal 8-hour workday already includes breaks approximately every two (2) hours and provide further explanation as to how limiting someone to breaks every two hours "adequately accounts for a moderate limitation in the ability to stay on task" or else it does not meet the *Mascio* requirements).

> work involving crisis situations, complex decision making, or
> constant changes in a routine setting.

*Thomas*, 916 F.3d at 310 (citations omitted).  In reversing the lower court's decision, the Fourth

Circuit made it clear that when an ALJ finds a claimant has moderate limitations in

concentration, persistence, or maintaining pace, the ALJ is expected to include "explicit

conclusions about how [the claimant's] mental limitations affect her ability to perform job-

related tasks for a full workday—a benchmark established by the [S.S.A.'s] own regulations."

*Id.* at 312 (citing SSR 96-8P, 1996 WL 374184 at *2) (holding that the ALJ's analysis was

insufficient because (1) the ALJ drew no explicit conclusions as to how the claimant's mental

limitation affects her ability to perform job-related tasks for a full workday; (2) the ALJ did not

sufficiently explain how she weighed significant evidence related to the claimant's mental

health treatment; (3) the ALJ expressed the RFC first and only then concludes that the

limitations caused by her impairments were consistent with that RFC; and (4) the ALJ did not

give enough information to understand what "could not perform work requiring a production

rate or demand pace" meant.

The ALJ in this case found in step three that "[w]ith regard to concentrating, persisting, or

maintaining pace, [Plaintiff] has a moderate limitation."  R. 18.  Despite Plaintiff reporting that

he had trouble with concentration, racing thoughts, hears noises in his apartment, and thinks

people are in his apartment, has anxiety attacks and depressive episodes, the ALJ concluded that

Plaintiff's attention and concentration were both intact.  R. 19.  After concluding that Plaintiff

had the RFC to perform a full range of work, the ALJ included the following non-exertional

limitations: "[Plaintiff] is limited to performing simple, routine tasks . . . [and can] frequently

interact with supervisors [and] occasionally interact with coworkers and the public."  R. 20.  As

established by the Fourth Circuit, this limitation and explanation does not account for Plaintiff's

moderate limitations in concentration, persistence, or maintaining pace. *Mascio*, 780 F.3d at 638. Absent additional explanation, remand is necessary. *Talmo,* 2015 WL 2395108, at \*3.

The ALJ's limitation for Plaintiff to "simple, routine tasks" and frequent interaction with supervisors and occasional interaction with co-workers and the public, R. 20, does not account for whether Plaintiff can perform these tasks for a full workday and workweek. *See Shinaberry*, 952 F.3d at 121 ("[T]he ability to perform simple tasks differs from the ability to stay on task"); *See also McDonald*, 2017 WL 3037554, at \*4 (holding that an RFC limiting a claimant to "simple, routine, and repetitive tasks" did not adequately account for the claimant's ability to sustain work throughout an eight-hour workday where the claimant had moderate difficulties in concentration, persistence, and pace). Plaintiff may be able to perform simple and routine tasks, but the Court cannot without further explanation, ascertain whether the ALJ believes Plaintiff can perform these tasks for an entire workday as required by the Fourth Circuit. *Thomas*, 916 F.3d at 312.

In the narrative discussion pertaining to the RFC analysis, the ALJ discussed Plaintiff's mental health records. R. 20–21. First, the ALJ concluded that Plaintiff's allegations regarding his depression, and anxiety, are not supported by the objective medical evidence. R. 20. The ALJ notes that "[t]he medical records confirm [Plaintiff's] severe impairments of depressive, bipolar and related disorders and personality disorders; however, the records do not support the severity he alleges." R. 20. The ALJ discusses Plaintiff's February 2017 consultative psychological examination. R. 20. The ALJ noted that Plaintiff's speech was normal, there was no bizarre thought content, no claims of auditory or visual hallucinations, and no suicidal ideation. R. 20–21. The ALJ also noted that in March 2017, Plaintiff showed a euthymic mood and was assigned to weekly therapy sessions. R. 21. The ALJ further noted that in

April 2017 Plaintiff's mental status examination revealed intact cognition, a linear thought

flow, no evidence of hallucinations or paranoia, intact attention and concentration, intact

memory, and intact impulse control.  R. 21.  The ALJ notes:

> As for [Plaintiff's] statements about the intensity, persistence,
> and limiting effects of his symptoms, they are inconsistent
> because [Plaintiff's] admitted daily activities and abilities do not
> support a finding of disability.  In his adult function report,
> [Plaintiff] denied any problem performing personal care tasks,
> such as dressing, bathing, and feeding himself.  He stated that he
> can prepare his own meals daily, including cereal, sandwiches,
> and frozen dinners.  [Plaintiff] reported that he is able to perform
> household chores such as cleaning, laundry, and washing dishes.

R. 21 (internal citations omitted).  The ALJ concluded that "[Plaintiff's] mental

status examinations consistently showed intact cognition, no evidence of

hallucinations or other perceptual disturbances, intact attention and

concentration and an intact memory."  R. 21.

    The Court finds that the ALJ failed to draw an "explicit conclusion about how

[Plaintiff's] mental limitations affect [her] ability to perform job-related tasks for a full

workday—a benchmark established by the Administration's own regulations."  *Thomas*, 916

F.3d at 312.  In fact, at no point in his decision does the ALJ discuss Plaintiff's "ability to

sustain work at a competitive pace over a typical workday."  *See Beau S. v. Comm'r, Soc. Sec.

Admin.*, No. SAG-18-2083, 2019 WL 3208002, at *3 (D. Md. July 16, 2019) (reversing and

remanding an ALJ's decision where it fails to address this same capability).  The Court

appreciates the ALJ's thorough review of the medical evidence, however, the ALJ has failed to

discuss Plaintiff's ability to perform job-related tasks with the limitations imposed by the ALJ

for a full workday.  Although *Shinaberry* stated there is no "categorical rule that requires an ALJ

to always include moderate limitations in concentration, persistence, or pace as a specific limitation

in the RFC," 952 F.3d at 121, nothing in *Shinaberry* states the ALJ is absolved from including "an explicit conclusions about how [the claimant's] mental limitations affect her ability to perform job-related tasks for a full workday—a benchmark established by the [S.S.A.'s] own regulations." *Thomas*, 916 F.3d at 312.   The Court finds that remand is required to allow the ALJ to establish for how long and under what conditions Plaintiff is able to focus his attention on work activities and stay on task at a sustained rate.   *Sean P. v. Saul, Comm'r of Soc. Sec.*, No. TMD 18-2072, 2019 WL 3778706, at *5 (D. Md. Aug. 12, 2019) (citing *Thomas*, 916 F.3d at 312 n.5).

Plaintiff also raises issues with: (1) whether the ALJ's hypothetical question to the VE, and the VE's response thereto is inconsistent with the D.O.T. and SSR 85-15 and 96-8p; (2) "whether the ALJ failed to find Plaintiff's full-scale IQ of 75 and amnestic disorder to be severe impairments at step 2 of sequential evaluation"; and (3) whether the ALJ failed to consider whether Plaintiff meets and/or equals Medical Listing 12.04(c).   Pl.'s Br. in Supp. of Mot. 14–23.   However, in view of the Court's decision to remand the matter due to the ALJ's inadequate *Mascio* analysis and the ALJ's error in substituting his opinion for that of Dr. Chambers, the Court declines to address the remaining issues.   *See Brown v. Colvin*, 639 F. App'x 921, 923 (4th Cir. 2016) (declining to address all of a claimant's issues raised once the court decided to remand on one issue); *Edna Faye H. v. Saul*, No. TMD-18-581, 2019 WL 4643797, at *6 (D. Md. Sept. 24, 2019).

On remand, the ALJ should address the issues raised by Plaintiff.   *Timothy H. v. Saul*, No. TMD 18-1675, 2019 WL 4277155, at *7 (D. Md. Sept. 10, 2019).   In remanding this case, the Court expresses no opinion as to whether the ALJ's ultimate decision that Plaintiff was not

disabled is correct or incorrect. *See Parker v. Comm'r, Soc. Sec.*, No. ELH-16-2607, 2017 WL 679211, at *4 (D. Md. Feb. 21, 2017).

**III.    Conclusion**

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion, **DENIES** Commissioner's Motion, **GRANTS** Plaintiff's Alternative Motion and **REMANDS** this matter for further proceedings.

June 4, 2020                                    _____/s/_____
                                                       Charles B. Day
                                                       United States Magistrate Judge

CBD/hjd

18